IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-40088-01-RDR |
| | ) | |
| JASON SELLERS, | ) | 18 U.S.C. §§ 2, 1343 |
| | ) | |
| Defendant, | ) | |
| | ) | |

# **INFORMATION**

The United States Attorney charges:

At all material times:

1. From in or about September 2007, and continuing through in or about August 2011, defendant **JASON SELLERS** devised and executed a scheme to defraud that cost the Kansas Medicaid program over $2 million.

## **The Medicaid Program**

2. The Federal Medicaid Program makes funds available for the medical needs of the poor in the participating states. A state that participates in Medicaid must designate a Single State Agency to administer the state's Medicaid program. Between July 1, 2006 and June 30, 2011, the Kansas Health Policy Authority was designated to administer the Medicaid program in Kansas, and since July 1, 2011,

the Kansas Department of Health and Environment, Division of Healthcare Finance has been the designated Single State Agency (hereinafter collectively referred to as "Kansas Medicaid").

3. One of the many services Kansas Medicaid provides is community-based mental health services. Federal and state funds for community-based mental health services pay for (1) specialty services, such as peer support and attendant care services that are critical to supporting mental health recovery; (2) screenings for persons potentially needing inpatient treatment; (3) MediKan community mental health services for persons applying for federal disability benefits; (4) the Home and Community Based Services Waiver for Children with a Serious Emotional Disturbance; and (5) the Psychiatric Residential Treatment Facility Community Based Alternatives Grant.

**Kansas Health Solutions**

4. In order to manage community-based mental health services for Medicaid recipients, Kansas Medicaid contracts with a managed care organization. Since on or about July 1, 2007, that managed care organization has been Kansas Health Solutions in Topeka, Kansas, and a prior related company, The Mental Health Consortium (hereafter collectively "Kansas Health Solutions"). Kansas Health Solutions' primary purpose is to process claims and make payments to

providers. Additionally, Kansas Health Solutions is responsible for overseeing a provider network that provides all community-based mental health services covered under the contract between Kansas Health Solutions and Kansas Medicaid, ensuring that Medicaid recipients receive the right community mental health service at the right time, in the right place, in the right amounts, and provided by the right person.

5. Under contract, and based on an administrative plan Kansas Medicaid reviewed and approved, Kansas Medicaid reimburses Kansas Health Solutions for allowable claims processed on a per member/per month basis and for actual administrative costs.

6. Just as Medicaid contracted with Kansas Health Solutions, Kansas Health Solutions contracted with other entities to provide administrative services and support. Included in those services were payments to a printing and brand management service company that provided enrollment packets, letters, and brochure design, as well as printing and mailing services to eligible enrollees in the Medicaid and MediKan programs.

**Jason Sellers**

7. Defendant **JASON SELLERS** was an employee of Kansas Health Solutions. On or about April 5, 2007, defendant **JASON SELLERS** was given the responsibility for the printing services account. On or about August 19, 2009, defendant **JASON SELLERS** was promoted to the position of Chief Financial Officer at Kansas Health Solutions and continued to manage the printing services account.

8. From about 2007 to 2011, defendant **JASON SELLERS** was involved with several local sports teams, including serving as the Boys' Basketball Coach at a local school, as the Manager for a United States Specialty Sports Association baseball team, and as the Assistant Coach of a United States Specialty Sports Association softball team.

**Advanced Business Consulting**

9. On or about May 21, 2008, "Jason Selman," an alias defendant **JASON SELLERS** used, submitted a W-9, Request for Taxpayer Identification Number and Certification, for a business known as Advanced Business Consulting. The Taxpayer Identification Number (TIN) for Advanced Business Consulting was defendant **JASON SELLERS'** social security number.

10. Advanced Business Consulting had an ostensible relationship with Kansas Health Solutions as an IT consulting firm, but in truth and in fact, defendant **JASON SELLERS** created Advanced Business Consulting as a shell company through which he stole Medicaid funds paid by Kansas Medicaid to Kansas Health Solutions. Advanced Business Consulting did no consulting work, IT or otherwise.

**The Scheme to Defraud**

11. The scheme to defraud worked as follows: using Kansas Health Solutions' printing services account, and the budgeted monies for printing services, defendant **JASON SELLERS** submitted, and caused vendors to submit, invoices to the printing services company for not only legitimate printing services, but also for illegitimate expenditures, including: (a) sports equipment and uniforms for sports teams with which he was associated, (b) computer equipment for the local school, him and his family, and (c) IT consulting services ostensibly performed by his sham business, Advance Business Consulting.

12. The printing services company then submitted general invoices to Kansas Health Solutions for printing services, plus its general profit margin. The general invoices had no detailed information indicating that the invoiced amounts included the sports equipment, uniforms, computers, IT consulting services, or an

additional profit margin on these items. Therefore, Kansas Health Solutions paid the invoices, believing them to be legitimate invoices for printing services.

13. Kansas Health Solutions primarily paid for the printing services, and unknowingly for the other items, by Electronic Funds Transfers, which move through the federal banking system via interstate wires.

14. The printing services company, in turn, paid the vendors supplying the sports equipment, uniforms, and computers, and paid **JASON SELLERS**, through his sham business, Advanced Business Consulting, for IT consulting services that were never provided.

15. The total amount of funds Kansas Health Solutions paid for items not related to Kansas Health Solutions' business activities was approximately $2,077,251.79, all of which monies came from Kansas Medicaid. Of this amount, defendant **JASON SELLERS** received approximately $1,124,580.67. Of this amount, $1,039,903 was bogus "consulting fees," and approximately $84,677.67 was for sports equipment, uniforms, and computers that he either used personally or gave to the local school and his sports teams. The remaining approximately $952,671.12 went to the printing services company for its approximately 85% "mark up" or profit margin on the consulting fees, sports equipment, uniforms, and computers.

16. Defendant **JASON SELLERS** spent the $1,039,903 in bogus "consulting fees," in part, to build and furnish an approximately $375,000, 3755-square foot home on approximately 11 acres in Lyndon, Kansas, with an elaborate outdoor pool, and a large outbuilding.

**COUNT 1**

17. The United States Attorney hereby incorporates by reference Paragraphs 1 through 16, as though fully restated and re-alleged herein.

18. On or about the following dates, in the District of Kansas, for the purpose of executing and attempting to execute a scheme and artifice to defraud Kansas Medicaid, defendant **JASON SELLERS** knowingly transmitted and caused to be transmitted by wire communication in interstate commerce, namely Electronic Fund Transfer ("EFT") payments from Kansas Health Solutions in Kansas to a printing services company in Maryland, knowing that the payments included monies he used for his personal benefit, including to pay himself for consulting services never provided, and to pay for sporting equipment, uniforms, and computers for him and his family, a local school, and his sports teams:

| On or about Date | Amount Paid | Amount of Fraud (not including mark-up) |
|---|---:|---:|
| November 9, 2007 | 152,515.85 | 15,856.14 |
| December 7, 2007 | 84,457.18 | 24,976.59 |

| On or about Date | Amount Paid | Amount of Fraud (not including mark-up) |
|---|---:|---:|
| January 22, 2008 | 136,426.89 | 2,213.00 |
| March 7, 2008 | 107,673.23 | 760.40 |
| April 9, 2008 | 73,972.91 | 10,939.31 |
| June 2, 2008 | 63,115.89 | 24,563.75 |
| July 2, 2008 | 361,182.00 | 25,979.61 |
| August 18, 2008 | 12,766.07 | 11,190.00 |
| September 10, 2008 | 25,801.04 | 6,890.00 |
| October 7, 2008 | 70,183.00 | 8,881.00 |
| October 31, 2008 | 57,015.38 | 19,421.00 |
| December 4, 2008 | 64,691.32 | 16,040.83 |
| December 31, 2008 | 31,510.00 | 8,432.53 |
| March 9, 2009 | 35,730.93 | 7,138.00 |
| April 6, 2009 | 22,695.92 | 4,144.00 |
| May 11, 2009 | 87,860.00 | 12,225.00 |
| June 5, 2009 | 38,050.00 | 12,220.00 |
| July 10, 2009 | 90,881.75 | 17,026.00 |
| August 7, 2009 | 22,194.00 | 6,598.00 |
| September 2, 2009 | 155,902.17 | 40,750.00 |
| October 5, 2009 | 141,457.79 | 19,474.17 |
| November 4, 2009 | 52,010.00 | 6,307.89 |
| December 7, 2009 | 42,578.00 | 12,156.10 |
| January 6, 2010 | 66,305.81 | 26,690.00 |
| February 4, 2010 | 63,294.54 | 31,130.00 |
| March 11, 2010 | 62,788.00 | 27,400.00 |
| April 5, 2010 | 78,728.75 | 76,404.00 |

| **On or about Date** | **Amount Paid** | **Amount of Fraud (not including mark-up)** |
|---|---:|---:|
| May 4, 2010 | 144,005.52 | 41,310.00 |
| June 7, 2010 | 88,413.00 | 67,400.00 |
| July 8, 2010 | 240,320.72 | 47,950.00 |
| August 3, 2010 | 181,929.45 | 48,297.00 |
| September 3, 2010 | 84,547.00 | 52,735.00 |
| October 6, 2010 | 100,078.80 | 69,236.00 |
| November 3, 2010 | 142,098.00 | 36,615.00 |
| December 7, 2010 | 88,100.00 | 21,700.00 |
| January 4, 2011 | 84,052.04 | 47,848.00 |
| February 2, 2011 | 81,100.00 | 22,525.00 |
| March 7, 2011 | 73,485.00 | 40,200.00 |
| April 5, 2011 | 77,154.41 | 44,177.00 |
| May 6, 2011 | 151,110.00 | 27,720.00 |
| June 3, 2011 | 72,371.00 | 58,342.35 |
| July 6, 2011 | 184,738.00 | 396.00 |
| August 4, 2011 | 66,471.19 | 22,322.00 |
| **Total** | | 1,124,580.67 |

19. The foregoing is in violation of Title 18, United States Code, Sections 2 and 1343.

## FORFEITURE ALLEGATION

20. Upon conviction of the offense alleged in Count 1 of this Information, defendant **JASON SELLERS** shall forfeit to the United States,

pursuant to 18 U.S.C. § 982, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to a sum of money equal to the amount of proceeds obtained as a result of the offense set out in Count 1, and the following property:

a. $61,104.99 in United States Currency in lieu of real property identified as 24980 Gum Street, Lyndon, Kansas;

b. a 2007 Ford Explorer, VIN 1FMEU53837UA10416;

c. a 2007 Kia Ronda, VIN KNAFG526977082815;

d. $7,538.54 in lieu of a 2007 GMC Yukon LL, VIN 1GKF16397J228258, seized from Citizens State Bank, account number XXX4767;

e. a 2007 Toyota Camry, VIN 4T1BB46K87U080025;

f. a 2005 Ford F-350 Lariat Pickup, VIN 1FTWW33P75EA64629;

g. a 2010 John Deere Z425 Eztrak residential zero turn radius mower with 54-inch edge deck;

h. a 2009 John Deere Gator XUV 620i;

i. $8,000.00 in United States Currency representing funds seized from Citizens State Bank, account number XXX4767;

j. an Iron Mike Master Shooting Machine (Baseball);

k. a Shoot-a-Way Shooting Machine (Basketball);

l. an Apple I-Pad, Serial #GB042EQ5Z3A;

m. an Apple I-Pad, Serial #V5020HP0ETV;

n. a Dell Inspiron Mini Laptop Netbook, Serial #74CCMK1;

o. a Sony Vaio, Serial #A222A98A;

p. a Sony Vaio, Serial #A222A98B;

q. a Sony Vaio, Serial #A222A98C; and

r. a Dell Latitude XT-2, Serial #50JPZK1.

21. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

Dated this 21st day of August, 2012.

BARRY R. GRISSOM
United States Attorney

By /s/ Tanya J. Treadway

Tanya J. Treadway #13255
Assistant United States Attorney